UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. 19-10150-REG |
| | ) | |
| JAMES E. MILLER, II | ) | CHAPTER 11 |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| _____/ | | |

MOTION FOR:
(1) RELIEF FROM AUTOMATC STAY, AND
(2) MODIFICATION OF AUTOMATICE STAY
_____

TO: THE HONORABLE ROBERT E. GRANT, UNITED STATES BANKRUPTCY JUDGE:

1. Sigma Restaurants, Inc. ("Sigma", or "Movant") hereby moves this Hon. Court for an Order as follows:

2. This Court has jurisdiction of this contested matter pursuant to 28 U.S.C. § 1334 and 157(b) and 11 U.S.C. §§ 362, 363 and 552(b).

3. James E. Miller, II ("Debtor") filed his petition under chapter 11 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) on February 12, 2019. No trustee has been appointed in debtor's chapter 11 case.

4. This case (case no. 19-10150-REG) is related to: *In re Trinity Investment Group, LLC*, being Pending Chp.: 11 Case No: 18-10627, filed 4/13/18, and *In re Vision Investment Group, LLC*, being Pending Chp.: 11 Case No: 18-10864, filed 5/11/18.

5. Sigma was at all times herein mentioned and now is a corporation duly organized under the laws of the State of Ohio.

6. In 1997 Suresh Nanda formed Sigma Restaurants, Inc. By 2013, under Mr. Nanda's control, Sigma owned and operated 15 successful Subway franchise restaurants throughout Lucas County, Ohio.

1. In June 2013, Sigma sold its 15 locations to debtors Trinity and Miller for $5.15 million dollars. Debtors financed their purchase through 100% seller financing by signing a $5.15 million dollar promissory note owed to Sigma. On May 9, 2013, after months of negotiation between the parties, including, but not limited to, Debtors repeated and extensive inspections of Sigma's Subway restaurants its books and records and its operating equipment, Sigma and Debtors Miller and Trinity entered into and executed an Asset Purchase Agreement ("APA"). *See* Affidavit of Suresh Nanda, **Exhibit 1** hereto, at ¶ 6, and, see, also, APA, a true and accurate copy of which is attached hereto and made a part hereof as **Exhibit 2**[1]. The subject matter of the Asset Purchase Agreement is the purchase by Debtors and sale by Sigma to Debtors of fifteen (15) different Subway restaurants, ten (10) of which are located in Toledo, Ohio, two (2) in Rossford, Ohio, two (2) in Oregon, Ohio, and one (1) in Maumee, Ohio - all being located in Lucas County, Ohio. See, APA, Exhibit 2 hereto, pg. 1, ¶ A.

7. On June 12, 2013, in closing the purchase contemplated by the APA, Debtors Miller and Trinity, jointly and severally, entered into a Term Loan & Security Agreement, **Exhibit 3** hereto, and executed a Cognovit Commercial Promissory Note ("Promissory Note"), **Exhibit**

---

[1] Mr. Nanda has attested the Exhibits 2 thru 14 herein are true and accurate copies of the documents they purport to be, *See* Affidavit of Suresh Nanda, Exhibit 1 hereto, at ¶ 20. Further, Mr. Nanda has attested the APA (Exhibit 2), the Promissory Note (Exhibit 3), the Term Loan & Security Agreement (Exhibit 8), the Bill of Sale and Assignment (Exhibit 13) and the Buyers Release and Hold Harmless Agreement (Exhibit 14) were each duly signed by the persons and on the dates as represented therein. *See* Affidavit of Suresh Nanda, Exhibit 1 hereto, at ¶ 21.

**4** hereto, in Sigma's favor for the principal amount of $5,150,000, payable in 144 equal monthly installments of principal and interest at the rate of $61,546.53 per month.

8. Further the Promissory Note expressly provides that it is an event of default if payment is not made as agreed and that Time is of the Essence in the performance of the obligations set forth in the Promissory Note. Exhibit 4.

9. The Term Loan & Security Agreement, Exhibit 3 hereto, also makes it an event of default to not timely make a monthly payment, See Exhibit 8, Article II, ¶2.1(b) (monthly payments required) and Article VII, ¶ 7.1(failure to timely pay is an event of default).

10. This seller financing was to be a short term arrangement while Debtors - themselves owners and operators of multiple Subway locations throughout Ohio, Michigan, and Indiana - secured long term financing to pay Sigma for transferring all its Subway operations to Debtors.

11. In November 2015, Debtors through then counsel, Mr. Anthony Crowell, notified the Sigma's Counsel, that they were not as successful in their operations as they anticipated. Specifically, Mr. Crowell indicated that Miller and Trinity were experiencing "a significant lower revenue stream and higher expenses than anticipated from the stores purchased". See, Crowell Email of November 10, 2015, **Exhibit 5** hereto.

12. Defendant's last payment to Plaintiff was made June 29, 2016, since then Debtors have retained the locations and generating revenue from operations. See, Affidavit of Suresh Nanda, Exhibit 1 hereto, at ¶ 10, 13.

13. ***On July 6, 2016,*** *Miller again through counsel, Mr. Anthony Crowell, notified Sigma's counsel, that* ***Miller and Trinity agreed that the current balance due on the Promissory Note as of June 30, 2016 was $4,810,000.*** See Crowell email of July 6, 2016 with attached

amendment to cognovit note, a true and accurate copy of which is attached hereto and made a part hereof as **Exhibit 6**.

14. On October 21, 2016, Plaintiff, Sigma, filed its Cognovit Complaint in Lucas County, Ohio case no. G-4801-CI-0201604782-000 requesting a joint and several judgment against Miller and Trinity (the "Lucas County Case"). On October 27, 2016, the Lucas County Court entered its Cognovit Judgment in favor of Sigma, and against Miller and Trinity for $5,287,088.25, plus monthly interest from October 12, 2016, at the rate of, $1904.40 per day, and late fees at the rate of $8244.75 per month, until paid in full, plus reasonable attorney fees and costs incurred in the action.

15. On November 16, 2016, Miller and Trinity, through new counsel John Burns, filed their Motion to Vacate Judgment and Motion to Strike Appearance and Answer, **Exhibit 7** hereto. Therein, Mr. Miller for the first time asserted under oath that he executed the Cognovit Note in Indiana. See, Motion to Vacate, at 2, ¶ 2, citing Miller Affidavit ¶4. On December 14, 2016, the Court entered its Opinion and Judgment Entry granting the Motion to Vacate Judgment, striking the Appearance and Answer thereby vacating the Court's October 27, 2016 Cognovit Judgment. The Court's judgment was based upon Mr. Miller's assertion that he did not execute the Cognovit Note within the jurisdiction of the Lucas Court's jurisdiction, as statutory prerequisite to enforcement of a cognovit provision. Accordingly, the Court ruled that it did not have subject matter jurisdiction to grant a cognovit judgment. A true and accurate copy of the Court's Opinion and Judgment Entry, filed December 14, 2016 is attached hereto and made a part hereof as **Exhibit 8**.

16. There is no dispute that Debtor Miller executed the Promissory Note. On its face, the Promissory Note evidences Debtor's representation of execution, see, Promissory Note,

Exhibit 4 hereto, and, moreover, Debtor Miller has admitted his execution of the Promissory Note, see Defendants' Motion to Vacate, Exhibit 7, at page 2, ¶¶s 2 & 9.

17. The Lucas County Case has been pending since October 21, 2016, see The Lucas County Case Docket, **Exhibit 9** hereto.

18. On May 26, 2017, Sigma filed its Motion for Summary Judgment ("MSJ") against both Trinity and Miller.

19. Rather than respond to the MSJ, Miller sought mediation which on June 23, 2017, was scheduled for July 11, 2017, by the Lucas County Court.

20. On September 15, 2017, Miller changed counsel from John Burns to Kevin Mitchell.

21. On September 29, 2017, the response to the MSJ was again delayed to December 15, 2017, based upon Miller's representation to the Court that he was in the process of obtaining a financing commitment to payout Sigma's claim. See, Docket, Exhibit 9 hereto, entry of 09/29/17.

22. On December 15, 2017, Miller, Trinity and Sigma "reported resolution of the matter, and requested the Court place the matter on inactive status pending satisfaction of terms necessary for completion of settlement". Further the Court held that "based on the parties' representation that the settlement terms shall conclude this proceeding on or before April 16, 2018, the Court hereby ORDERS the proceedings STAYED until April 16, 2018, with the parties to file a Judgment Entry concluding this case by April 16, 2018." See, Docket, Exhibit 9 hereto, entry of 12/15/17.

23. On April 16, 2018, after Miller's failure to honor his settlement agreement with Sigma and subsequent further motion practice, the Court allowed Miller until April 27, 2018 to respond to Sigma's Motion to reactivate the case.

24. On April 24, 2108, Trinity filed its notice of filing Bankruptcy with the Lucas County Court of Common Pleas, thereby staying further Court action in the Lucas County Case as against Trinity and Miller, see, Docket, Exhibit 9 hereto, entry of 11/19/18.

25. On December 20, 2018, the Lucas County Case was reactivated as to Defendant Miller, see, Docket, Exhibit 9 hereto, entry of 12/20/18.

26. On December 26, 2018, Sigma filed its Renewed Motion for Summary Judgment against Miller in the Lucas County Case.

27. On January 9, 2019, Miller filed his Response to Sigma's Renewed Motion for Summary Judgment.

28. On February 19, 2019, before the Lucas County Court ruled on Sigma's Renewed Motion for Summary Judgment, Miller filed his Notice of Bankruptcy filing thereby staying further action in the Lucas County Case.

29. 11 U.S.C. § 362 provides in pertinent part as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> -    11 U.S.C. § 362 (d)(1)

30. The proceedings in the Lucas County Case, after nearly 2 ½ years of litigation, mediation, on again off again settlement, and motion practice, have reached an advanced stage, with determination of Sigma's Renewed Motion for Summary Judgment against Miller being essentially decisional. Under such circumstances it is most unfair to Sigma to require Sigma to duplicate all its efforts to reduce the amounts it claims owed by Debtor Miller to judgment in the Bankruptcy Court.

> "Where the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed." *Fernstrom*, 938 F.2d at 737 (citations omitted). "The attention paid to the stage to which the non-bankruptcy litigation has progressed is based on the sound principle that the further along the litigation, the more unfair it is to force the plaintiff suing the debtor-defendant to duplicate all of its efforts in the bankruptcy court." *Id.* (internal citations and quotations omitted).

- *In re Malacina*, 2018 Bankr. LEXIS 2735, *8, citing, *In the Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991).

31. Accordingly, it is respectfully submitted that Sigma has established sufficient cause establishing that they are entitled to relief from the automatic stay and that stay is to be lifted allowing the Lucas County Case to proceed to determination of the amount, if any, of Sigma's claim against Debtor Miller.

32. Sigma repeats and reiterates each and every allegation and representation set forth in paragraphs 1 through 31 hereinabove as if fully rewritten herein.

33. Sigma is a secured creditor of Miller pursuant to the terms of the APA and the Term Loan & Security Agreement, having perfected its security interest against Miller by UCC filing in the State of Indiana.

34. In light of Debtor Miller's filings in this case and elsewhere it is evident that Debtor is unable to provide Sigma with adequate protection and is unable to propose a plan of reorganization.

35. By reason of debtor's inability to propose a plan of reorganization, good cause exists to vacate the automatic stay of 11 U.S.C. § 362(a) of the Bankruptcy Code.

36. By reason of debtor's inability to afford adequate protection to movant, good cause exists to vacate the automatic stay of 11 U.S.C. § 362(a) of the Bankruptcy Code.

**WHEREFORE**, Sigma prays:

(1) For an Order granting Sigma relief from the automatic stay of 11 U.S.C. § 362(a) of the Bankruptcy Code;

(2) For an Order modifying the automatic stay of 11 U.S.C. § 362(a) of the Bankruptcy Code to permit the State of Ohio, Lucas County Court of Common Pleas to make and enter findings of facts, conclusions of law, and a final judgment in Lucas County Court of Common Pleas case no. G-4801-CI-0201604782-000, captioned *Sigma Restaurants, Inc. v. James E. Miller, II, et al.*;

(3) For such other and further relief as this Court may deem just and proper.

Dated: February 24, 2019               Respectfully submitted,

/s/ Norman A. Abood

Norman A. Abood (OH. Sup. Ct. #0029004)
THE LAW OFFICE OF NORMAN A. ABOOD
101 Broadcast Building
136 N. Huron St.
Toledo, OH  43604-1139
Phone: 419-724-3700
Fax:    419-724-3701
E-Mail: norman@nabood.com
- *Attorney for Sigma Restaurants, Inc.*

.